1   MICHAEL HOLECEK, SBN 281034
      mholecek@gibsondunn.com
2   LAUREN M. BLAS, SBN 296823
      lblas@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
4   Los Angeles, CA  90071-3197
    Telephone:  213.229.7000
5   Facsimile:   213.229.7520

6   MEGAN COONEY, SBN 295174
      mcooney@gibsondunn.com
7   GIBSON, DUNN & CRUTCHER LLP
    3161 Michelson Drive
8   Irvine, CA  92612-4412
    Telephone:  949.451.3800
9   Facsimile:   949.451.4220

10  Attorneys for Defendants
    AMAZON.COM SERVICES LLC and
11  AMAZON LOGISTICS, INC. (erroneously sued
    as AMAZON FLEX, a business entity of
12  unknown form)

13

14              UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16

17  ALEJANDRO GARCIA PUENTES, on       CASE NO.   2:21-cv-00414
    behalf of himself, and all others
18  similarly situated,                **DEFENDANTS AMAZON.COM**
                                       **SERVICES LLC'S AND AMAZON**
19                Plaintiff,           **LOGISTICS, INC.'S**
                                       **(ERRONEOUSLY SUED AS**
20      v.                             **AMAZON FLEX, A BUSINESS**
                                       **ENTITY OF UNKNOWN FORM)**
21  AMAZON.COM SERVICES LLC, a         **NOTICE OF REMOVAL OF CLASS**
    Delaware limited liability company; **ACTION**
22  AMAZON FLEX, a business entity of
    unknown form; and DOES 1 through    (Los Angeles County Superior Court
23  20, inclusive,                      Case No. 20STCV43846)

24                Defendants.          Action Filed:    November 13, 2020
                                       Trial Date:      None Set
25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I. TIMELINESS OF REMOVAL ....................................................................... 1

II. SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL ............... 2

    A.    The Proposed Class Consists of More than 100 Members ....................... 3

    B.    Amazon and Plaintiff Are Not Citizens of the Same State ...................... 4

    C.    The Amount In Controversy Exceeds $5 Million ..................................... 6

        1.    Plaintiff's Claim for Intentional Misclassification Alone Places Nearly $5 Million in Controversy ........................................ 8

        2.    Plaintiff's Claim for Alleged Violation of Labor Code Section 226 Alone Places Nearly $5 Million in Controversy ......... 9

        3.    Plaintiff's Request for Waiting Time Penalties Places An Additional $1.44 Million In Controversy ..................................... 11

        4.    Plaintiff's Request for Attorneys' Fees Places An Additional $2.33 Million In Controversy .......................................... 13

        5.    In Total, Just Three of Plaintiff's Eight Causes of Action, Including Attorneys' Fees, Places More Than $11.6 Million In Controversy ................................................................... 14

III. THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER ............... 15

Gibson, Dunn & Crutcher LLP

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) ................................................................. 6, 8, 13, 14

*Ayala v. Cox Auto., Inc.*,
  2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) .......................................... 4

*Barcia v. Contain-A-Way, Inc.*,
  2009 WL 587844 (S.D. Cal., Mar. 6, 2009) ............................................ 14

*Campbell v. Vitran Exp., Inc.*,
  471 F. App'x 646 (9th Cir. 2012) ............................................................ 7

*Crummie v. CertifiedSafety, Inc.*,
  2017 4544747 (N.D. Cal. Oct. 11, 2017) ................................................ 12

*Dart Cherokee Basin Op. Co., LLC v. Owens*,
  574 U.S. 81 (2014).............................................................................. 4, 6, 7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................ 14

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)................................................................................... 5

*Johnson v. Columbia Props. Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006) ............................................................... 4, 5

*Kantor v. Wellesley Galleries, Ltd.*,
  704 F.2d 1088 (9th Cir. 1983) ................................................................ 4

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
  199 F. Supp. 2d 993 (C.D. Cal. 2002)..................................................... 7

*Korn v. Polo Ralph Lauren Corp.*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008) ................................................... 7

*LaCross v. Knight Transp. Inc.*,
  775 F.3d 1200 (9th Cir. 2015) ................................................................ 6

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Lewis v. Verizon Commc'ns, Inc.*,
   627 F.3d 395 (9th Cir. 2010) ........................................................................ 6

*Mamika v. Barca*,
   68 Cal. App. 4th 487 (1998) ........................................................................ 11

*Marentes v. Key Energy Servs. Cal., Inc.*,
   2015 WL 756516 (E.D. Cal. Feb. 23, 2015) ................................................ 12

*Mays v. Wal-Mart Stores, Inc.*,
   804 F. App'x 641 (9th Cir. Mar. 17, 2020) ................................................. 10

*Mejia v. DHL Express (USA), Inc.*,
   2015 WL 2452755 (C.D. Cal. May 21, 2015) .............................................. 10

*Pineda v. Bank of Am., N.A.*,
   50 Cal. 4th 1389 (2010) ............................................................................... 12

*Rippee v. Boston Mkt. Corp.*,
   408 F. Supp. 2d 982 (S.D. Cal. 2005) ........................................................... 7

*Salter v. Quality Carriers, Inc.*,
   974 F.3d 959 (9th Cir. 2020) ..................................................................... 6, 7

*Soto v. Tech Packaging, Inc.*,
   2019 WL 6492245 (C.D. Cal. Dec. 3, 2019) ............................................... 10

*State Farm Mut. Auto Ins. Co. v. Dyer*,
   19 F.3d 514 (10th Cir. 1994) ......................................................................... 4

*Std. Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013) ................................................................................... 6, 7

*Tajonar v. Echosphere, L.L.C.*,
   2015 WL 4064642 (S.D. Cal. July 2, 2015) ................................................ 12

**Statutes**

28 U.S.C. § 84(c) ............................................................................................ 16

28 U.S.C. § 1332(c)(1) ................................................................................. 4, 5

Gibson, Dunn &
Crutcher LLP

iii

# TABLE OF AUTHORITIES
(continued)

Page(s)

28 U.S.C. § 1332(d) ..............................................................................*passim*

28 U.S.C. § 1441 ..................................................................................2, 15, 16

28 U.S.C. § 1446 ..............................................................................1, 2, 15, 16

28 U.S.C. § 1453 ..........................................................................................2, 15

Cal. Civ. Proc. Code § 338(a) ........................................................................12

Cal. Civ. Proc. Code § 382 ..............................................................................2

Cal. Lab. Code § 201 ................................................................................11, 12

Cal. Lab. Code § 202 ................................................................................11, 12

Cal. Lab. Code § 203 ................................................................................11, 12

Cal. Lab. Code § 226 ....................................................................8, 9, 10, 11

**Other Authorities**

https://www.dir.ca.gov/dlse/faq_minimumwage.htm ...................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF ALEJANDRO GARCIA PUENTES AND HIS COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendants Amazon.com Services LLC and Amazon Logistics, Inc. (erroneously sued as Amazon Flex "a business entity of unknown form")[1] (together, "Amazon") hereby remove to the United States District Court for the Central District of California the above-captioned state court action, originally filed as Case No. 20STCV43846 in Los Angeles County Superior Court, State of California.  Removal is proper on the following grounds:

## I.    TIMELINESS OF REMOVAL

1.    Plaintiff Alejandro Garcia Puentes ("Plaintiff") filed a putative Class Action Complaint against Amazon.com Services LLC and "Amazon Flex, a business entity of unknown form" in Los Angeles County Superior Court, State of California, Case No. 20STCV43846, on November 13, 2020.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Civil Case Cover Sheet Addendum and Statement of Location, (e) Notice of Case Assignment – Unlimited Civil Case, (f) Initial Status Conference Order, (g) Minute Order Regarding Newly Filed Class Action, (h) Clerk's Certificate of Mailing, (i) Proof of Service of Summons on Amazon.com Services LLC, and (j) Proof of Service of Summons on "Amazon Flex" are attached as Exhibits A–J to the Declaration of Michael Holecek ("Holecek Decl.") filed concurrently here.

---

[1]  Plaintiff purportedly served "Amazon Flex, a business entity of unknown form" by delivering a copy of the Summons and Complaint to Amazon.com Services LLC.  *See* Declaration of Michael Holecek, Ex. J.  "Amazon Flex" is not a legal entity, but refers to the Amazon Flex Program, which allows independent contractors to contract with Amazon Logistics, Inc.  However, because Plaintiff contends service was effected on "Amazon Flex," this Notice of Removal is made on behalf of Amazon.com Services LLC and Amazon Logistics, Inc. which appears to have been erroneously named as "Amazon Flex."  Defendants reserve the right to challenge the improper naming of "Amazon Flex" as a defendant in this action.

Gibson, Dunn & Crutcher LLP

2.     According to the Notice of Service of Process, Plaintiff personally served Amazon through its registered agent for service of process on December 17, 2020.  *See* Holecek Decl. ¶ 10, Ex. I.  Consequently, service was completed on December 17, 2020.  This notice of removal is timely because it is filed within 30 days after service was completed.  28 U.S.C. § 1446(b).

## II.     SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

3.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and all claims asserted against Amazon pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4.     CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8).  This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action.  *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Holecek Decl. Ex. B, Compl. ¶ 48.

5.     Plaintiff asks the Court to "issue an Order certifying the Classes" Plaintiff pleads in his Complaint.  Holecek Decl. Ex. B, Compl., Prayer for Relief.  He seeks to represent "[a]ll California citizens employed [Amazon]" as "'delivery driver[s]'" "who have worked for [Amazon] in the four years prior to the filing of the original Complaint." *Id.*, Compl. ¶¶ 49–56.

6.     In his Complaint, Plaintiff alleges eight causes of action against Amazon: (1) Misclassification of Employee as "Independent Contractor"; (2) Failure to Pay Wages; (3) Failure to Pay Minimum Wages; (4) Failure to Indemnify for Necessary Business Expenses; (5) Failure to Provide Lawful Meal and Rest Periods; (6) Failure to Provide Itemized Wage and Hour Statements; (7) Waiting Time Penalties; and (8) Violations of Unfair Competition Law.

7.    Among other things, Plaintiff alleges that putative class members are entitled to unpaid wages, premiums for missed meal and rest breaks, restitution, interest, and attorneys' fees and costs.  *See* Holecek Decl. Ex. B, Compl., Prayer for Relief.

8.    Removal of a class action is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

9.    Amazon denies any liability in this case, both as to Plaintiff's individual claims and as to the claims he seeks to pursue on behalf of the putative class.  Amazon also intends to oppose class certification and believes that class treatment is inappropriate under these circumstances in part because there are many material differences between the experiences of Plaintiff and the putative class members he seeks to represent.  Amazon expressly reserves all rights to oppose class certification and to contest the merits of all claims asserted in the Complaint.  However, for purposes of the jurisdictional requirements for removal only, the allegations in Plaintiff's Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million.  *See* 28 U.S.C. § 1332(d)(6).

**A.    The Proposed Class Consists of More than 100 Members**

10.    Based on Plaintiff's allegations, this action satisfies CAFA's requirement that the putative class contains at least 100 members.  *See* 28 U.S.C. § 1332(d)(5)(B).

11.    Plaintiff's proposed class consists of "[a]ll California citizens employed [Amazon]" as "'delivery driver[s]'" "who have worked for [Amazon] in the four years prior to the filing of the original Complaint"—between November 13, 2016 and November 13, 2020.  Holecek Decl., Ex. B, Compl. ¶¶ 49–56.  Plaintiff therefore seeks to represent a class comprised of other independent contractors who, like Plaintiff, contracted with Amazon to provide delivery services through the Amazon Flex Program. *See, e.g., id.* ¶¶ 6, 84.  These independent contractor workers are known as Delivery

Partners ("DPs").  *Id.*, Ex. J, Declaration of Alexa Harwysz submitted in *Diaz, et al. v. Amazon.com, Inc., et al.*, Case No. 3:20-cv-07792-VC, Dkt. 1-2 ("Harwysz Decl.") ¶ 3. According to Amazon's records, there were at least 10,000 individuals who had active contracts with Amazon to provide delivery services through the Amazon Flex Program as independent contractors in California between August 21, 2019 and August 21, 2020. *Id.* ¶ 5.[2]

12.     Accordingly, while Amazon denies that class treatment is permissible or appropriate, the proposed class consists well over 100 members.

**B.     Amazon and Plaintiff Are Not Citizens of the Same State**

13.     Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

14.     A person is a citizen of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A party's residence is prima facie evidence of his or her domicile.  *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)).  Plaintiff alleges that he "is now, and at all times mentioned in th[e] Complaint, was a citizen of the State of California."  Holecek Decl., Ex. B, Compl. ¶ 10.  Plaintiff is therefore considered a citizen of California for purposes of removal.  *See Ayala*, 2016 WL 6561284, at *4.

15.     A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1).  "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props.*

---

[2] Amazon previously submitted this information with its successful removal of *Diaz, et al. v. Amazon.com, Inc., et al.*, Case No. 3:20-cv-07792-VC, Dkt. 1, to the United States District Court for the Northern District of California.  Amazon reserves the right to present more evidence of the sizes of Plaintiff's putative classes in this action, should "plaintiff contest[], or the court question[]," Amazon's "plausible allegation" regarding class size.  *Dart Cherokee Basin Op. Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

*(Cont'd on next page)*

*Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Amazon.com Services LLC is a limited liability company organized under the laws of Delaware and has its principal place of business in Seattle, Washington.  Holecek Decl., Ex. K, Declaration of Zane Brown submitted in *Clayborn v. Amazon.com Services Inc., et al.*, Case No. 5:20-cv-02368-JVS-SHK, Dkt. 1-1 ("Brown Decl.") ¶ 2.[3]  Amazon.com, Inc. is the sole member of Amazon.com Services LLC and Amazon.com Services LLC is wholly owned by Amazon.com, Inc., which is a Delaware corporation with its principal place of business in Washington.  *Id.*

16.    The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) & (d)(2)(A) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters, provided that the headquarters is the actual center of direction, control, and coordination."  *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).  Amazon.com Services LLC's and Amazon.com, Inc's headquarters, which are located in Washington, constitute their "nerve center[s]" under the test adopted in *Hertz* because their high-level officers oversee each corporation's activities from that state.  *See* Holecek Decl., Ex. K, Brown Decl. ¶ 2.  As such, Amazon.com Services LLC is a citizen of Delaware and Washington.  *See* 28 U.S.C. § 1332(c)(1); *Johnson*, 437 F.3d at 899.

17.    Amazon Flex is a smartphone-application-based program that Amazon Logistics, Inc. uses to contract with independent contractors to provide local delivery services.  *See* Holecek Decl., Ex. J, Harwysz Decl. ¶ 3.  Consequently, Amazon Flex is not an entity and was thus improperly named in Plaintiff's Complaint.  However, even if Plaintiff asserted claims against Amazon Logistics, Inc., minimal diversity would still exist because Amazon Logistics, Inc. is a Delaware corporation with its principal place of business in Washington.  *Id.* ¶ 2.

---

[3]  Amazon previously submitted this information with its successful removal of *Clayborn v. Amazon.com Services Inc., et al.*, Case No. 5:20-cv-02368-JVS-SHK, Dkt. 1, to the United States District Court for the Central District of California.

18.     Accordingly, Plaintiff and Amazon are citizens of different states and CAFA's minimal diversity requirement is met.  28 U.S.C. § 1332(d)(2)(A).

**C.     The Amount In Controversy Exceeds $5 Million**

19.     CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs.  28 U.S.C. § 1332(d)(2).  In calculating the amount in controversy, a court must aggregate the claims of all individual class members.  28 U.S.C. § 1332(d)(6).

20.     Plaintiff's Complaint attempts to plead that the individual and class claims are "under the $5[ million] threshold" (Holecek Decl., Ex. B, Compl. ¶ 9), but he does not have the power to bind absent class members to this, certainly by way of an allegation made on information and belief.  As the Supreme Court has held, a named plaintiff's pre-certification stipulation to limit the damages claims of absent class members "does not resolve the amount-in-controversy question" because such a plaintiff cannot "bind the rest of the class."  *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 596 (2013).  Accordingly, "when following [CAFA] to aggregate the proposed class members' claims," a court should "ignore[] the stipulation."  *Id.*

21.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014).  To satisfy this burden, a defendant may rely on a "reasonable" "chain of reasoning" that is based on "reasonable" "assumptions."  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).  "An assumption may be reasonable if it is founded on the allegations of the complaint."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 959 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements," quotations and citations omitted).  That is because "[t]he amount in controversy is simply an estimate of the total amount in disputes, not a prospective assessment of defendant's liability."  *Lewis v. Verizon*

*Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. Importantly, plaintiffs seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court." *Std. Fire Ins. Co.*, 568 U.S. at 595–96.

22.    Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

23.    Although Amazon denies that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal *only*, if Plaintiff were to prevail on every claim and allegation in his Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 million.

24.    Amazon reserves the right to present evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 959 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegations with competent proof," quotations and citations omitted). "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without giving the defendant an opportunity to

show by a preponderance of the evidence that the jurisdictional requirements are met." *Arias*, 936 F.3d at 924. But for present purposes, it is sufficient to note that Plaintiff's claims regarding intentional misclassification, inaccurate wage statements, and waiting time penalties alone place more than $5 million in controversy.

**1.      Plaintiff's Claim for Intentional Misclassification Alone Places Nearly $5 Million in Controversy**

25.      Plaintiff alleges in his First Cause of Action that Amazon "purposefully misclassified" Plaintiff and the putative class as "Independent Contractor[s]." *See* Holecek Decl., Ex. B, Compl. ¶¶ 80–82. On this ground, Plaintiff seeks, among other things, "penalties of $25,000.00 for each violation, in addition to any other penalties or fines permitted by law." *Id.* ¶ 85.

26.      Under Labor Code section 226.8(a), it is "unlawful for an[] employer to . . . [w]illful[ly] misclassif[y] an individual as an independent contractor." If an employer violates section 226.8(a) it is "subject to a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation." Cal. Lab. Code § 226.8(b). If an employer "engag[es] in a pattern or practice of these violations" it is "subject to a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation." *Id.* § 226.8(c).

27.      Amazon denies that any such penalties are owed to Plaintiff or putative class members, or that they are a proper form of relief at all. However, for purposes of this jurisdictional analysis *only*, Amazon relies on Plaintiff's allegations that the penalties are owed. Plaintiff alleges that "[d]uring the appropriate time period, [Amazon's] non-exempt delivery drivers are and were misclassified as . . . independent contractor[s]." *Id.* ¶ 6. Accordingly, it is reasonable to assume for the purposes of this jurisdictional analysis only, that all class members were misclassified as independent contractors.

Gibson, Dunn & Crutcher LLP

28.    Between August 21, 2019 and August 21, 2020, Amazon's records show that there were at least 10,000 individuals who had active contracts with Amazon to provide delivery services through the Amazon Flex Program as independent contractors in California. *Id.*, Ex. J, Harwysz Decl. ¶ 5.  Even assuming only 700 of these individuals were improperly misclassified as independent contractors based on Plaintiff's allegations, and based on the minimum civil penalty of $5,000 per violation under Labor Code § 226.8(b), the amount in controversy with respect to Plaintiff's First Cause of Action alone is approximately **$3.5 million**, calculated as follows:

| | |
|---|---|
| Conservative amount in controversy for Plaintiff's misclassification claim based on 700 of the more than 10,000 DPs (700 DPs x $5,000): | **$3,500,000** |

29.    The amount in controversy alleged by Plaintiff on this claim alone almost meets the $5 million requirement and is based on a conservative estimate of the number of DPs in the class period.

**2.    Plaintiff's Claim for Alleged Violation of Labor Code Section 226 Alone Places Nearly $5 Million in Controversy**

30.    Plaintiff alleges in his Sixth Cause of Action that Amazon failed to provide Plaintiff and putative class members with "timely and accurate wage and hour statements" that "caus[ed] each of them not to be paid wages they were entitled to" and "deceiv[ed] them regarding their entitlement to minimum wages, meal period and rest period wages."  Holecek Decl., Ex. B, Compl. ¶¶ 121, 123.  On this ground, Plaintiff seeks, among other things, "$50.00 in civil penalties for the initial pay period, in which a violation occurred, and $100.00 per employee for each subsequent pay period, up to a statutory maximum of $4,000.00" under Labor Code section 226. *Id.*, Compl. ¶ 119.

31.    Under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay

Gibson, Dunn &
Crutcher LLP

9

1    period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is

2    entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1).

3         32.    Amazon denies that any such penalties are owed to Plaintiff or putative

4    class members.   However, for purposes of this jurisdictional analysis *only*, Amazon

5    relies on Plaintiff's allegations that the penalties are owed.  Plaintiff alleges that Amazon

6    "[a]t all relevant times . . . failed to provide" accurate wage statements because of its

7    alleged underlying failures to provide "wages [Plaintiff and putative class members]

8    were entitled to," including "minimum wages, meal period and rest period wages."

9    Holecek Decl., Ex. B, Compl. ¶¶ 121, 123; *see also id.* ¶¶ 15, 24.   Plaintiff's wage

10   statement claim is therefore entirely derivative of his other claims for unpaid wages,

11   including minimum wage and other premium wages.   Plaintiff alleges that "[b]ecause

12   [Amazon] misclassified" Plaintiff and putative class members "at no time during [their]

13   employment" were they "provided with . . . itemized wage statements as required by

14   law."  *See id.* ¶¶ 15, 24–25.   Based on those allegations, it is reasonable to assume for

15   the purposes of this jurisdictional analysis only, that all class members received

16   inaccurate wage statements each pay period.   *See Mejia v. DHL Express (USA), Inc.*,

17   2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) (concluding it is appropriate to use

18   100% violation rate for wage statement claim where the claim is derivative); *Soto v.*

19   *Tech Packaging, Inc.*, 2019 WL 6492245, at *7 (C.D. Cal. Dec. 3, 2019).[4]

20        33.    Between August 21, 2019 and August 21, 2020, Amazon's records show

21   that there were at least 10,000 DPs in California with active contracts to perform delivery

22   services over more than an aggregate of 100,000 weekly periods.  *Id.*, Ex. J, Harwysz

23   Decl. ¶ 5.   During this time, it was Amazon's practice to pay DPs twice each week for

24   services performed.   *Id.*   Even if there were only 48,000 inaccurate wage statements—

25   less than 25% of the more than 200,000 potential wage statements—Plaintiff's wage

26   statement claim alone would place nearly $5 million in controversy.   Based on this very

27   _____

28   [4] Amazon does not concede that penalties under § 226 are recoverable for an entirely
     derivative theory like the one Plaintiff advances here.  *See Mays v. Wal-Mart Stores,*
     *Inc.*, 804 F. App'x 641, 643 (9th Cir. Mar. 17, 2020).

Gibson, Dunn &
Crutcher LLP

conservative estimate, and on Plaintiff's allegations, the amount in controversy with respect to Plaintiff's Sixth Cause of Action alone is approximately **$4.4 million**, calculated as follows:

| | |
|---|---|
| Penalty for initial pay period for 8,000 of the more than 10,000 DPs (8,000 initial pay periods x $50): | $400,000 |
| Penalty for 40,000 subsequent pay periods (40,000 subsequent pay periods x $100): | $4,000,000 |
| Conservative amount in controversy for section 226 claim, based on Plaintiff's allegations: | **$4,400,000** |

34.     The amount in controversy alleged by Plaintiff on this claim alone nearly meets the $5 million requirement and is based on a conservative estimate of the number of DPs in the class period and the alleged number of pay periods worked by those DPs.

### 3.     Plaintiff's Request for Waiting Time Penalties Places An Additional $1.44 Million In Controversy

35.     Plaintiff also alleges that he and other putative class members who stopped working with Amazon are entitled to recover "waiting time penalties" pursuant to Labor Code section 203.  *See* Holecek Decl., Ex. B, Compl. ¶¶ 127–131.

36.     If an employer willfully fails to pay all wages due to an employee at the time of termination, as required by Labor Code Section 201, or within 72 hours after resignation, as required by Labor Code Section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days.  Cal. Lab. Code § 203.  An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed.

37.     To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days" and noting that the "critical computation" is

"the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, L.L.C.*, 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015) (same).  Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, 2017 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where plaintiffs alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

38.     Amazon denies that any such penalties are owed to Plaintiff or any putative class members.  However, for purposes of this jurisdictional analysis *only*, Amazon relies on Plaintiff's allegations that the penalties are owed.  Plaintiff alleges that Amazon "willful[ly] failed to pay" "minimum wages, overtime compensation, and meal and rest period compensation" "upon termination or within 72 hours of resignation, as required" by Labor Code sections 201 and 202.  Holecek Decl., Ex. B, Compl. ¶¶ 128, 130.  Plaintiff's claim is therefore derivative of their other unpaid wage claims.  Plaintiff further alleges that he and other putative class members are "entitled to payment of their overtime, meal and rest periods . . . and in wait time penalties . . . calculated based on 30 days of the[ir] daily wage rate" under Labor Code section 203.  *Id*. ¶¶ 130–131.  Based on these allegations, it is reasonable to assume that each putative class member is entitled to the thirty days' wages.  *See Crummie*, 2017 4544747, at *3.

39.     There were at least 10,000 DPs in California between August 21, 2019 and August 21, 2020.  Holecek Decl, Ex. J, Harwysz Decl. ¶ 5.  Of those individuals, at least 4,000 offboarded from the Amazon Flex platform and ceased performing delivery services for Amazon during that same time period.  *Id.* ¶ 5.[5]

---

[5]  The statute of limitations for an action under Labor Code § 203 is three years, so the actual amount placed in controversy by this claim is higher.  Cal. Civ. Proc. Code § 338(a); Cal. Lab. Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1397 (2010).

40.     From January 1, 2019 to December 31, 2019, the state minimum wage was $12.00 per hour.  *See* https://www.dir.ca.gov/dlse/faq_minimumwage.htm.  Although the minimum wage increased on January 1, 2020, Amazon conservatively assumes that each DP would be entitled to waiting time penalties based on an hourly rate of pay of $12.00.

41.     If, as Plaintiff alleges, DPs who ceased performing delivery services for Amazon between August 21, 2019 and August 21, 2020 were owed wages and did not receive them, the amount in controversy with respect to the waiting time penalties claim for these individuals alone would be approximately **$1.44 million**, calculated as follows:

| | |
|---|---|
| $12.00 hourly rate x 1 hour per day:[6] | $12.00 daily rate |
| $12 x 30 days maximum penalty: | $360 per DP |
| Amount in controversy for waiting time penalties, based on Plaintiff's allegations ($360 x 4,000 DPs): | **$1,440,000** |

42.     Accordingly, Plaintiff's claim for waiting time penalties due to unpaid wages places an additional $1.44 million in controversy.  Taken together, Plaintiff's claims for intentional misclassification, inaccurate wage statements, and waiting time penalties place at least $9.34 million in controversy, thus exceeding CAFA's $5 million threshold.

### 4.     Plaintiff's Request for Attorneys' Fees Places An Additional $2.33 Million In Controversy

43.     Plaintiff also explicitly seeks attorneys' fees should he recover under for any of the claims in this action.  *See* Holecek Decl., Ex. B, Compl., Prayer For Relief. Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction.  *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy").  Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark

---

[6]  This is a conservative estimate based on the fact that delivery blocks are typically 2 to 6 hours.  *See* https://flex.amazon.com/faq.

for an award of attorney fees.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at \*5 (S.D. Cal., Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'").

44.    Here, Amazon has established that the total amount in controversy is at least **9.34 million** based on Plaintiff's intentional misclassification, wage statement, and waiting time penalty claims, and Plaintiff has not indicated that he will seek less than 25% of a common fund in attorneys' fees.  *See* Holecek Decl., Ex. B, Compl., Prayer For Relief (seeking attorneys' fees).  Although Amazon has shown that the amount in controversy absent attorneys' fees surpasses the jurisdictional threshold, this Court should nevertheless include the potential attorneys' fees in evaluating jurisdiction. *Arias*, 936 F.3d at 922.  Amazon denies that any such attorneys' fees are owed to Plaintiff or putative class members.  However, for purposes of this jurisdictional analysis only, Amazon relies on Plaintiff's allegations that the attorneys' fees are owed.

45.    Using a twenty-five percent benchmark figure for attorneys' fees for Plaintiff's allegations regarding his intentional misclassification, wage statement, and waiting time penalty claims results in estimated attorney's fees of approximately **2.33 million**, calculated as follows:

| | |
|---|---|
| Conservative Estimate of Amount in Controversy from Intentional Misclassification, Wage Statement, and Waiting Time Penalties Claims: | $9,340,000 |
| Attorneys' Fees Benchmark: | 25% |
| Attorneys' Fees: | **$2,335,000** |

**5.    In Total, Just Three of Plaintiff's Eight Causes of Action, Including Attorneys' Fees, Places More Than $11.6 Million In Controversy**

46.    Plaintiff's  allegations  regarding  Amazon's  alleged  intentional misclassification, failure to provide accurate wage statements, and failure to timely pay wages or waiting time penalties place $9.34 million in controversy and Plaintiff's request for attorneys' fees places an additional $2.33 million in controversy.  In total,

this means that Plaintiff's Complaint conservatively places at least **$11.6 million** in controversy.

47.     These figures are under-inclusive of the actual amount in controversy because they are based on conservative assumptions about Plaintiff's putative class allegations, including regarding the size of the putative class and the rate of which the alleged Labor Code violations occurred, and do not account for, among other things, any recovery sought for failure to pay all wages when due (Second Cause of Action), failure to pay minimum wages (Third Cause of Action), failure to reimburse business expenses (Fourth Cause of Action), failure to provide meal and rest periods (Fifth Cause of Action), or Unfair Competition Law violations (Eighth Cause of Action).

48.     Plaintiff's allegations therefore place more than the requisite $5 million in controversy.  The jurisdictional amount in controversy requirement is met, and removal to this Court is proper under CAFA.

### III.     THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

49.     Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

    a)   This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

    b)   The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

    c)   The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

    d)   At least one member of the putative class is a citizen of a state different from that of any defendant as required by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

50.     The United States District Court for Central District of California is the federal judicial district in which the Los Angeles County Superior Court sits.  This action

was originally filed in the Los Angeles County Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).

51.    True and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Civil Case Cover Sheet Addendum and Statement of Location, (e) Notice of Case Assignment – Unlimited Civil Case, (f) Initial Status Conference Order, (g) Minute Order Regarding Newly Filed Class Action, (h) Clerk's Certificate of Mailing, (i) Proof of Service of Summons on Amazon.com Services LLC, and (j) Proof of Service of Summons on "Amazon Flex" are attached as Exhibits A–J to the Declaration of Michael Holecek, filed concurrently here.  These filings constitute the complete record of all records and proceedings in the state court.

52.    Upon filing the Notice of Removal, Amazon will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Los Angeles County Superior Court, pursuant to 28 U.S.C. § 1446(d).

Dated:  January 15, 2021

MICHAEL HOLECEK
LAUREN M. BLAS
MEGAN COONEY
GIBSON, DUNN & CRUTCHER LLP


By: */s/ Michael Holecek*
　　　　　Michael Holecek

Attorneys for Defendants
AMAZON.COM SERVICES LLC and
AMAZON LOGISTICS, INC. (erroneously
sued as AMAZON FLEX, a business entity of
unknown form)

104326919.3

Gibson, Dunn &
Crutcher LLP